UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
<u>For Online Publication Only</u>
------------------------------------------------------------------------X
WINDSOR COLEMAN,

                       Petitioner,

          -against-
**MEMORANDUM & ORDER**
21-cv-01669 (JMA)

EARL BELL,

FILED
CLERK

3/4/2025 4:00 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

                     Respondent.
------------------------------------------------------------------------X

**AZRACK, United States District Judge:**

      Petitioner Windsor Coleman ("Coleman"), proceeding <u>pro se</u>, petitions this Court pursuant to 28 U.S.C. § 2254 for a writ of habeas corpus.  (Pet., ECF No. 1 at 3-22.)  Coleman is presently serving a twelve-year prison sentence for the drug convictions he challenges here.  In the original Petition and his supplemental filings, (ECF Nos. 10, 13), hereinafter together referred to as "Petition," Coleman asserts seven grounds for habeas relief:

- Ground One:  Coleman was denied due process and his rights under the Confrontation Clause were violated when the prosecution failed to call a confidential informant as a trial witness.

- Ground Two:  Coleman was denied due process when false statements were asserted in the search warrant affidavit.

- Ground Three:  Coleman was denied due process when the trial court failed to suppress a suggestive photographic array.

- Ground Four:  Coleman's trial counsel was ineffective in various respects.

- Ground Five:  Coleman was denied due process when the prosecution failed to produce discovery, specifically evidence logbooks and field test reports.

- Ground Six:  Coleman was denied due process when the state court's protective order concerning the confidential informant impaired his ability to suppress evidence.

- Ground Seven: Coleman's appellate counsel was ineffective.

      For the following reasons, the Petition is DENIED in its entirety.

# I.    BACKGROUND

## A.    <u>Factual Background</u>

In 2017, Coleman was convicted, after a jury trial,[1] of three counts of selling a controlled substances and two counts of possessing controlled substances with the intent to sell.  As explained below, the evidence at trial showed that Coleman and his girlfriend, Jennifer Lopez, were involved in the sale of heroin and cocaine.  (Trial Tr. at 666-67.)  Coleman and Lopez were indicted together, but Lopez was severed from the case before the trial.  (ECF No. 7-5_ at 5.)

The prosecution's evidence at trial established the following.

In December 2015, the Nassau County police began an investigation into Coleman.  (<u>Id.</u> at 545.)  Two detectives with the Nassau County Police Department's Narcotics Bureau – Richard Raupp and William Casey – recruited a confidential informant, who then conducted controlled purchases of narcotics from Coleman and Lopez while wearing audio and video recording equipment.  (<u>Id.</u> at 544-45.)

---

[1]    Coleman's jury trial took place from March 20 to April 3, 2017.  Transcripts of the state court trial and related proceedings can be found on PACER in the Case Docket (<u>Coleman v. Bell</u>, No. 21-cv-1669 (E.D.N.Y.)) as follows:

| Proceeding | ECF No. |
|---|---|
| Suppression Hearing (October 17, 2016) | 7-2 |
| Suppression Hearing, Continued (November 22, 2016) | 7-3 |
| Jury Selection | 7-5 |
| Jury Selection | 7-6 |
| Jury Selection and Trial | 7-7 |
| Trial | 7-8 |
| Trial | 7-9 |
| Trial | 7-10 |
| Trial | 7-11 |
| Sentencing | 7-16 |

Transcripts of the trial are consecutively paginated and will be referenced throughout as "Trial Tr." Transcripts of the hearings will be referenced throughout as "Hearing Tr." accompanied by the respective hearing's date.

The confidential informant bought heroin from Coleman on December 27, 2015, February 24, 2016, and March 16, 2016. (Id. at 549, 609-10, 639-40.) On March 26, 2016, after the confidential informant had contacted Coleman to organize a purchase, Lopez sold heroin to the confidential informant at a basement apartment she shared with Coleman. (Id. at 667.)

Law enforcement witnesses testified, including Raupp and Casey. (See id. at 540-853, 875-990.) The prosecution also introduced video and audio recordings of the transactions between Coleman and the confidential informant on December 27, 2015 and February 24, 2016. (See id. at 549-56, 560, 569, 601, 609-20, 767-68, 780-82, 791-96, 843, 908-12, 913-20, 919-23, 926, 966-70; Respondent's Aff. in Opp. to Pet. ("Respondent's Opp. Aff.") ¶¶ 14–15, ECF No. 23 at 1-29.) Video from the February 24, 2016 transaction shows Coleman counting out glassine envelopes of heroin, wrapping them in a rubber band, and handing them to the confidential informant. (Respondent's Opp. Aff. ¶ 15.) Lopez is seen on the video as well. (Id.) The video also shows a small child playing with narcotics paraphernalia across the table where Coleman conducted business. (Id.)

The March 26, 2016 transaction was also captured on video and played for the jury. (Trial Tr. at 667-75, 679-80, 824-25, 942-43; Respondent's Opp. Aff. ¶ 17.)

Raupp also testified about a transaction on March 16, 2016 in which Coleman sold twenty grams of heroin to the confidential informant, whom Rapp accompanied while undercover. (Trial Tr. at 644-45, 816, 845, 856.) Shortly before the sale, Raupp and the confidential informant had called Coleman to set up the transaction—a recording of the call was played at trial. (Id. at 639-45.) After the confidential informant purchased the heroin from Coleman outside of Raupp's view, Raupp and Coleman had a conversation where Raupp told Coleman that "if this good we'll do business together" and Coleman responded, "Okay." (Id. at 655.) The informant and Raupp did

3

not wear recording equipment during this transaction due to concerns for Raupp's safety.  (Id. at 990.)

On March 31, 2016, Raupp called Coleman and ordered sixty grams of heroin.  (Id. at 683-89.)  On the call—which was recorded and played for the jury—Raupp requested that the heroin be packed in a specific manner and be ready for the next day pickup.  (Id.)  In a text message exchange between Raupp and Coleman on April 1, 2016, Coleman confirmed that the requested heroin was available for pickup.  (Id. at 691-94.)  On April 1, 2016, after Coleman and Lopez left their apartment, they were arrested, and the police recovered 147 small bags of heroin from Lopez.  (Id. at 887-88.)

A search warrant was then executed on their apartment.  (Id. at 976-77.)  Raupp and Casey testified that cocaine, heroin, and various drug paraphernalia were recovered from the apartment during the search.  (See id. at 697-702, 714-16, 723-31, 735-37, 744, 751, 881-85, 946-47.)  The prosecution also presented testimony from Michael Duschenchuk, a forensic scientist at the Nassau County Medical Examiner, Division of Forensic Services, who tested some of the substances at issue and confirmed they were heroin.[2]  (See id. at 1012-46.)

The confidential informant did not testify.[3]  The defense did not present any witnesses.  Defense counsel's closing focused on the absence of the confidential informant and stressed a missed witness charge which the court later gave to the jury.

---

[2]    The parties also entered into a stipulation that certain substances at issue at trial were laboratory-tested and determined to heroin and cocaine.  (Trial Tr. at 1080-82.)

[3]    The court made clear that the defense was entitled to learn the identity of the confidential informant before the trial and that no protective order was in place for the trial.  (See March 16, 2017 Sup. Ct. Order, ECF 7-14 at 11-15; see also Trial Tr. at 898-901.)

On April 3, 2017, the jury found Coleman guilty of five counts:

   • Count 1:  Criminal Sale of a controlled substance in second degree (December 27, 2015 transaction);

   • Count 2:  Criminal Sale of a controlled substance in the third degree (February 24, 2016 transaction);

   • Count 3:  Criminal Sale of a controlled substance in the first degree (April 1, 2016 transaction, based on the agreement to sell);

   • Counts 4 and 5:  Criminal possession of a controlled substance in the second degree (based on the heroin and cocaine recovered at the apartment).

(Trial Tr. at 1221.)

Coleman was sentenced to an aggregate determinate prison sentence of twelve years followed by 5 years of post-release supervision.  (Sent'g Tr. at 11.)

### B.    <u>Procedural History</u>

In addition to Coleman's direct appeal, he also filed, <u>pro se</u>, a post-trial motion pursuant to Criminal Procedure Law ("C.P.L.") § 330.30 and three post-conviction motions pursuant to CPL § 440.10.   The procedural history of these motions is briefly set out below.  Where relevant, the Court addresses the specific arguments raised in these motions (and the state court's disposition of those arguments) in the discussion section of this opinion in the context of each of the particular claims raised in Coleman's federal habeas petition.

### 1.   **Motion to Set Aside the Verdict**

Coleman filed a <u>pro se</u> motion seeking to set aside the verdict pursuant to C.P.L.  § 330.30. (C.P.L. § 330.30 Mot., ECF No. 7-12.)  On June 30, 2016, before the sentencing hearing, Justice William C. Donnino—who presided over Coleman's trial—summarily denied the motion.  (Sent'g Tr. at 2.)  In a subsequently issued written order, the court elaborated on the reasons for the denial

and stressed that the evidence against Coleman was overwhelming.  (Aug. 16, 2017 Sup. Ct. Order at 1, ECF No. 7-14.)

### 2. Direct Appeal

Coleman also appealed his conviction to the Appellate Division, Second Department. (ECF No. 7-17.)  In 2019, the Appellate Division rejected Coleman's arguments and affirmed his convictions.  See People v. Coleman, 176 A.D.3d 851, 851, 107 N.Y.S.3d 877, 878 (App. Div. 2d Dept. 2019).

Coleman then sought leave to appeal to the Court of Appeals.  In his application, he only raised the challenge to the search warrant that he had raised before the Appellate Division and did not advance the other two claims raised on direct appeal.  (See ECF No. 7-31 at 1-2.)  The Court of Appeals denied leave.  See People v. Coleman, 34 N.Y.3d 1076 (2019).

### 3. First C.P.L. § 440.10 Motion to Vacate Judgment

In April 2018, while his direct appeal was still pending, Coleman filed a motion pursuant to C.P.L. § 440.10 seeking to vacate his judgment of conviction.  (First C.P.L. § 440.10 Mot., ECF No. 7-18.)  Coleman raised various claims, including multiple allegations of ineffective assistance of counsel.  Justice Helene F. Gugerty summarily denied the motion, finding that all of Coleman's claims were procedurally barred because they were record-based and as such, Coleman was required to raise them on direct appeal.  (July 2, 2018 Sup. Ct. Order, ECF No. 7-21.)  Coleman did not appeal that order.

### 4. Second C.P.L. § 440.10 Motion to Vacate Judgment

In February 2021, Coleman filed a second motion pursuant to C.P.L. § 440.10 raising various claims, including ineffective assistance of counsel.  (Second C.P.L. § 440.10 Mot., ECF No. 7-36.)  On October 8, 2021, Justice Felice J. Muraca denied the motion, finding that all claims

were procedurally barred.  (Oct. 8, 2021 Sup. Ct. Order, ECF No. 8-1.)  Justice Muraca found that

Coleman had either raised these issues on appeal or failed to do so without a justifiable reason.[4]

Justice Muraca also explained that Coleman's attempts to reassert claims that he had previously

raised in his § 330.30 motion and first § 440.10 motion were also procedurally barred by C.P.L.

§ 440.10(3)(b).  Justice Muraca also denied certain claims on the merits.  Coleman sought leave to

appeal the order to the Appellate Division, which was denied.  (Feb. 4, 2022 App. Div. Order, ECF

No. 9-1.)  He also sought leave to appeal to the Court of Appeals, which was dismissed.  (May 31,

2022 Ct. of App. Order, ECF No. 14-6.)

## 5.  Third C.P.L. § 440.10 Motion to Vacate Judgment

In April 2022, Coleman filed his third motion pursuant to C.P.L. § 440.10 seeking to vacate

his convictions based on ineffectiveness of counsel.  (Third C.P.L. § 440.10 Mot., ECF No. 14-7.)

In May 2022, Justice Terence P. Murphy denied Coleman's motion, rejecting all of Coleman's

ineffective assistance claims on the merits.  (May 18, 2022 Sup. Ct. Order at 2-4, ECF No. 14-9.)

Coleman did not seek leave to appeal the denial of this motion.[5]

---

[4]    On October 25, 2021, after Justice Muraca's order was issued, C.P.L § 440.10 was amended.  Prior to this amendment, which took effect on October 25, 2021, defendants were required to raise record-based ineffective assistance claims on direct review and could be precluded from raising such record-based ineffective assistance claims in a § 440.10 motion.  However, this amendment now allows record-based ineffective assistance claims to be raised for the first time in a § 440.10 motion.  See C.P.L. § 440.10(2)(b), (c).

[5]    In a letter dated July 5, 2022, Coleman asserts that he was placed in segregated confinement on June 5, 2022 and that when he subsequently received his legal materials on June 20, 2022, he noticed that certain materials, including documents concerning the instant criminal case, were missing.  (ECF No. 13.)  In this letter, Coleman claims that the prison's negligence prevented him from seeking an appeal of Justice Murphy's decision within the thirty-day deadline to seek leave to appeal.  The record, however, does not indicate that—despite his numerous subsequent filings with this Court—Coleman ever sought permission from the Appellate Division to file a late application for leave to appeal.  See CPL § 460.30(1); Harrison v. Griffin, No. 14-CV-6437, 2015 WL 5178712, at *1 (E.D.N.Y. Sept. 3, 2015) (indicating that, after petitioner's 440.10 motion was denied, he requested and was granted permission to file a late application for leave to appeal the denial of the § 440.10 motion).

### 6. Federal Habeas Petition

In March 2021, Coleman, appearing filed the instant pro se Petition, while his second §
440.10 motion was still pending in the state court.  (Pet.)  He raised seven grounds for relief.

Respondent moved to dismiss the Petition, citing Coleman's failure to exhaust most of his
claims in the state court.  (Mot. to Dismiss at 22-27, ECF No. 7.)  Coleman acknowledged that
some of his claims were unexhausted and asked the Court to stay the petition so that he could
exhaust these claims.  (Resp. to Mot. to Dismiss, ECF No. 10.)  Coleman also agreed withdraw
one claim that alleged deliberate indifference on the part of the correctional facility.  (Id. at 2.)

While the motion to dismiss was pending, Coleman pursued his second and third § 440.10
motions.  The Court ultimately denied Respondent's motion to dismiss in May 2023 as it appeared
that Coleman had now largely exhausted his claims.  See Coleman v. Bell, No. 21-cv-1669, 2023
WL 2683000 (E.D.N.Y. Mar. 29, 2023).  The Court ordered Respondent to file a response to the
merits of the Petition.  (ECF No. 17.)  The Court also allowed Coleman to amend his Petition to
include the claim of ineffective assistance of appellate counsel.  See Coleman v. Bell, 2023 WL
2683000 at *2.  At the same time, the Court denied Coleman's request for "all exculpatory evidence
needed for litigating future lawsuits." [6]  Id.

---

[6]     In various submissions to the Court, Coleman has claimed that the corrections department deprived him from
his legal papers and legal research tools.  (ECF No. 15 at 2-3.)  Coleman asked the Court for an order compelling the
correction department to produce his property and legal paperwork, claiming that he had no access to a variety of
items, such as the state court documents from his case.  (Id.)  In the order denying Respondent's motion to dismiss,
the Court denied this motion to compel and advised Coleman to seek the copies of the documents from his former
counsel.  See Coleman v. Bell, No. 21-cv-1669, 2023 WL 2683000, at *2 (E.D.N.Y. Mar. 29, 2023).  Thereafter, on
numerous occasions, Coleman contacted the Court and complained about the difficulties he was having in obtaining
his case file.  (ECF Nos. 18, 21.)  In a letter received on June 15, 2023, Coleman speculates that his "trial counsel [is]
attempt[ing] to hide the fact that he received the logbook entries and failed to investigate" the chain of custody of the
drug evidence.  (ECF No. 21 at 1.)  As discussed infra, the record makes clear that Coleman's counsel did receive
these logbooks.  Moreover, as explained infra, Coleman's claims that his trial counsel was ineffective for not using
the logbooks at trial and challenging the chain of custody are meritless because, inter alia, there is not a reasonable
probability that such arguments would have resulted in a different verdict.  Finally, all necessary records for deciding
this Petition have been provided to this Court.  Coleman has filed a direct appeal, a § 330.30 motion, and three
§ 440.10 motions.  The trial transcript and the extensive record for those motions are all before this Court.

After the motion to dismiss was denied, Respondent filed its substantive opposition to the Petition, arguing that all of Coleman's claims are either not cognizable on habeas review, procedurally barred, or meritless.  (Respondent's Opp. Aff.; Respondent's Mem. in Opp. of Pet. ("Respondent's Opp. Mem."), ECF No. 23 at 20-55.)  Coleman has also filed a reply and various other submissions, raising further arguments about his claims and asserting why any procedural defaults should be excused.  (Reply, ECF No. 26; ECF Nos. 10, 13.)

On August 23, 2024, Coleman filed with the Court a "Letter motion to compel court order decision," (ECF No. 30), which asserts, in conclusory fashion, violations of his rights under the First, Fourth, Fifth, Sixth, Eighth, Thirteenth, and Fourteenth Amendments.  (Id.)  Many of these claims appear to relate to the conditions of Coleman's confinement as evidenced by the fact that he attached numerous grievances to this letter.[7]

## II.     DISCUSSION

### A.  Standards of Review

#### 1.  Overview of AEDPA

Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104–132, 110 Stat. 1214 (1996), to restrict the "power of federal courts to grant writs of habeas corpus to state prisoners."  Williams v. Taylor, 529 U.S. 362, 399 (2000) (O'Connor, J., concurring).  Under AEDPA, a district court will "entertain an application for a writ of habeas corpus [on] behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  Therefore, to succeed on the federal habeas review, the petitioner's claims

---

[7]     Coleman's claims about his conditions of confinement and treatment in prison are not cognizable in this § 2254 proceeding.  To the extent any of the constitutional claims Coleman cites in this letter are intended to challenge his conviction or sentence, those conclusory claims are all plainly meritless.

9

must satisfy three elements: (1) have exhausted the appropriate state remedies, (2) not be procedurally barred, and (3) pass the hurdle of the AEDPA's deferential review of the state courts' decisions.  See 28 U.S.C. § 2254.

### 2. Exhaustion Requirement

Crucially, a federal court cannot review a habeas petition unless a petitioner "has exhausted the remedies available" in state courts.  28 U.S.C. § 2254(b)(1)(A).  This exhaustion requirement is designed to provide state courts with the " 'opportunity to pass upon and correct alleged violations of its prisoners' federal rights.' "  Jackson v. Edwards, 404 F.3d 612, 619 (2d Cir. 2005) (quoting Picard v. Connor, 404 U.S. 270, 275 (1971)).  Therefore, a petitioner must show that he fairly presented his federal claim to the "highest state court capable of reviewing" that claim. Jackson v. Conway, 763 F.3d 115, 151 (2d Cir. 2014) (quoting Rosa v. McCray, 396 F.3d 210, 217 (2d Cir. 2005)); see also Daye v. Att'y Gen. of N.Y., 696 F.2d 186, 190 n.3 (2d Cir. 1982) (en banc). Although the petitioner need not " 'cite chapter and verse of the Constitution in order to satisfy this requirement,' he must tender his claim 'in terms that are likely to alert the state courts to the claim's federal nature.' "  Jackson, 763 F.3d at 133 (quoting Carvajal v. Artus, 633 F.3d 95, 104 (2d Cir. 2011)).

Nevertheless, AEDPA recognizes that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2).  This is appropriate where the claim is "plainly meritless" or "patently frivolous."  See Williams v. Artus, 691 F.Supp.2d 515, 526 (S.D.N.Y. 2010) ("If the unexhausted claims are 'plainly meritless,' the district court can dismiss these claims on the merits.") (citation omitted); Warren v. Goord, No. 06-CV-1423, 2013 WL 1310465, at *11

(E.D.N.Y. Mar. 28, 2013) (collecting cases where courts in this Circuit denied unexhausted claims "upon a determination that they are patently frivolous") (citations omitted).

Additionally, the federal court may deem unexhausted claims to be exhausted, but procedurally barred where the state court to which the Petitioner must present those claims would find them procedurally barred.  See Jackson, 763 F.3d at 143–44.  In those circumstances, the claims are deemed exhausted, but procedurally defaulted.  See Clark v. Perez, 510 F.3d 382, 390 (2d Cir. 2008) (citing Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991)); Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001); Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997).  The federal court may then only address the merits of the procedurally defaulted claim if the petitioner can overcome the procedural bar in one of the ways described below.

### 3.  Procedural Default

Initially, a federal court will not review a habeas petition "when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'"  Cone v. Bell, 556 U.S. 449, 465 (2009) (quoting Coleman, 501 U.S. at 729).  For this reason, under the doctrine of procedural default, the federal court will not review "the merits of claims, including constitutional claims, that a state court declined to hear because the [petitioner] failed to abide by a state procedural rule."  Martinez v. Ryan, 566 U.S. 1, 9 (2012).  When a state court has dismissed a claim on such a procedural ground, the petitioner is procedurally barred from raising that claim in a § 2254 petition unless the petitioner can meet certain exceptions explained below.

Additionally, the procedural bar rule applies if the state court decided a claim on such procedural grounds, even if the state court also addressed the merits of a claim.  Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990) (per curiam); see also Harris v. Reed, 489 U.S. 255, 264

11

n.10 (1989) (noting that "a state court need not fear reaching the merits of a federal claim in an alternative holding" where the court explicitly invokes a procedural rule as an independent ground for its decision) (emphasis in original).

Finally, as explained earlier, a procedural bar rule also applies "where 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" Reyes, 118 F.3d at 140 (quoting Coleman, 501 U.S. at 735) (emphasis omitted).

In order to overcome the procedural bar, the petitioner must demonstrate either (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law" or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750. To demonstrate cause, the petitioner must establish that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule": "for example, that the factual or legal basis for a claim was not reasonably available to counsel or that some interference by officials ... made compliance impracticable." Murray v. Carrier, 477 U.S. 478, 488 (1986) (internal quotation marks and citations omitted). The petitioner may also satisfy the cause requirement by demonstrating that the failure of his attorney to comply with state procedural rules denied him constitutionally adequate representation. See Tavarez v. Larkin, 814 F.3d 644, 650 (2d Cir. 2016), cert. denied, 137 S. Ct. 106 (2016); see also Restrepo v. Kelly, 178 F.3d 634, 640 (2d Cir. 1999). The Petitioner, however, generally cannot invoke this ground unless he first asserted an equivalent independent Sixth Amendment ineffective assistance claim in state court and exhausted his state-court remedies with respect to that claim. See, e.g., Edwards v. Carpenter, 529 U.S. 446, 451–52 (2000).

As for the prejudice requirement, the petitioner must demonstrate that counsel's errors (or any other basis invoked by the petitioner to establish cause) not only "created a possibility of prejudice, but that they worked to his actual and substantial disadvantage." United States v. Frady, 456 U.S. 152, 170 (1982) (emphasis in original).

Even if the petitioner cannot establish cause and prejudice, a federal court may also excuse petitioner's procedural default if he can show that a fundamental miscarriage of justice would result, in other words, "that he is actually innocent of the crime for which he has been convicted." Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002) (citing Schlup v. Delo, 513 U.S. 298, 321 (1995)). To prevail, the petitioner must put forth "new reliable evidence ... that was not presented at trial. However, because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." Schlup, 513 U.S. at 324.

### 4. AEDPA Standard of Review

If a state court reached the merits of a claim, a federal court may not grant a writ of habeas corpus unless the state court's adjudication of the claim either: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d). The Supreme Court has construed AEDPA "to give independent meaning to 'contrary [to]' and 'unreasonable.'" Jones v. Stinson, 229 F.3d 112, 119 (2d Cir. 2000).

A state court's decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially

indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412–13 (2000) (O'Connor, J., concurring). A decision involves "an unreasonable application" of clearly established federal law when a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." Id. at 413. This standard does not require that all reasonable jurists agree that the state court was wrong. Id. at 409–10. Rather, the standard "falls somewhere between 'merely erroneous and unreasonable to all reasonable jurists.'" Jones, 229 F.3d at 119 (quoting Francis S. v. Stone, 221 F.3d 100, 109 (2d Cir. 2000)).

AEDPA " 'imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt.'" Jones v. Murphy, 694 F.3d 225, 234 (2d Cir. 2012) (quoting Hardy v. Cross, 565 U.S. 65, 66 (2011) (per curiam)). " 'This standard is … 'difficult to meet,' " and appropriately so. White v. Woodall, 572 U.S. 415, 419 (2014) (quoting Metrish v. Lancaster, 569 U.S. 351, 357–58 (2013)), reh'g denied, 573 U.S. 927 (2014). A petitioner must show that the " 'state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Id. at 419–20 (quoting Harrington, 562 U.S. at 103.

Furthermore, a state court's determinations of factual issues are "presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Lynn v. Bliden, 443 F.3d 238, 246 (2d Cir. 2006). A state court's findings of fact will be upheld "unless objectively unreasonable in light of the evidence presented in the state court proceeding." Lynn, 443 F.3d at 246–47 (quoting Miller-El v. Cockrell, 537 U.S. 322, 340 (2003)). Thus, a federal court may overrule the state court's

14

judgment only if "after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated." Williams, 529 U.S. at 389.

### 5.    Ineffective Assistance of Counsel Standard

Coleman asserts that both his trial and appellate counsel provided ineffective assistance.[8] Federal claims of ineffective assistance of counsel are governed by the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). To prevail on a such claim, a petitioner must establish that (1) the "counsel's performance was deficient" and (2) "that deficient performance prejudiced the defense." Id. at 687. For a claim to succeed, both Strickland elements must be satisfied, and a reviewing court is not required to "even address both components of the inquiry if the [petitioner] makes an insufficient showing on one." Id. at 697.

First, "[t]o establish deficient performance, a person challenging a conviction must show that 'counsel's representation fell below an objective standard of reasonableness.'" Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 688). In evaluating this prong, "the court must make 'every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time,' and 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Henry v. Poole, 409 F.3d 48, 63 (2d Cir. 2005) (quoting Strickland, 466 U.S. at 689). Furthermore, "'[t]he failure of a lawyer to invoke meritless objections cannot constitute constitutionally deficient performance.'" Parks v. Sheahan, 104 F. Supp. 3d 271, 285 (E.D.N.Y. 2015) (quoting Hicks v. Ercole, No. 09-CV-2531, 2015 WL 1266800, at *23 (S.D.N.Y. Mar. 18, 2015)).

---

[8]    For a number of Coleman's claims, he asserts that the state courts made erroneous rulings at trial and on direct appeal and also brings related ineffective assistance claims concerning the same subject matter.

On the second prong, to make a sufficient showing of prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  In making the determination whether the specified errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law." Strickland, 466 U.S. at 694.

Furthermore, the "highly deferential Strickland standard is made doubly so on habeas review, as AEDPA requires deference to the state court's ruling." Bogan v. Brandt, No. 11-CV-1550, 2017 WL 2913465, at *9 (E.D.N.Y. July 6, 2017) (internal quotation marks and citations omitted).  "Bearing this deferential standard in mind, it is unsurprising that 'the great majority of habeas petitions that allege constitutionally ineffective counsel' fail." Miller v. LeClair, No. 20-CV-1546, 2024 WL 1797341, at *12 (E.D.N.Y. Apr. 25, 2024) (quoting Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001)).

The Strickland test applies as well to the claims of the ineffective assistance of appellate counsel.  See Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994), cert. denied, 513 U.S. 820 (1994); see also Claudio v. Scully, 982 F.2d 798, 803 (2d Cir. 1992), cert. denied, 508 U.S. 912 (1993) ("Although Strickland addressed the constitutional standard for ineffective assistance of counsel in the trial counsel context, our Circuit has also adopted the Strickland two-prong test in assessing the effectiveness of appellate counsel.")  Importantly, an "[a]ppellate counsel does not have a duty to raise all colorable claims on appeal; rather, counsel should use reasonable discretion to determine which claims constitute a defendant's best arguments for obtaining a reversal of a

16

conviction." <u>Waiters v. United States</u>, 472 F. Supp. 3d 7, 15 (E.D.N.Y. 2020) (internal quotation marks and citations omitted).

### 6. <u>Pro Se</u> Status

Petitioner "bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated." <u>Jones v. Vacco</u>, 126 F.3d 408, 415 (2d Cir. 1997). In light of Petitioner's <u>pro se</u> status, the Court construes his submissions liberally and interprets them " 'to raise the strongest arguments that they suggest.' " <u>Kirkland v. Cablevision Systems</u>, 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (quoting <u>Burgos v. Hopkins</u>, 14 F.3d 787, 790 (2d Cir. 1994)). However, a <u>pro se</u> petitioner is not excused "from compliance with relevant rules of procedural and substantive law." <u>Traguth v. Zuck</u>, 710 F.2d 90, 95 (2d Cir. 1983) (internal quotation marks and citation omitted).

## B. <u>Analysis</u>

Coleman asserts seven grounds for habeas relief:

- Ground One: Coleman was denied due process and his rights under the Confrontation Clause were violated when the prosecution failed to call a confidential informant as a trial witness.

- Ground Two: Coleman was denied due process when false statements were asserted in the search warrant affidavit.

- Ground Three: Coleman was denied due process when the trial court failed to suppress a suggestive photographic array.

- Ground Four: Coleman's trial counsel was ineffective in various respects.

- Ground Five: Coleman was denied due process when the prosecution failed to produce discovery, specifically evidence logbooks and field test reports.

- Ground Six: Coleman was denied due process when the state court's protective order concerning the confidential informant impaired his ability to suppress evidence.

- Ground Seven: Coleman's appellate counsel was ineffective.

For the reasons stated below, the Court denies each of these claims as they either do not present cognizable federal claims, are procedurally defaulted, and/or lack merit.

### 1. Denial of Due Process/Confrontation Clause Violation Based on the Prosecution's Failure to Call the Confidential Informant at Trial (Ground One)

Coleman claims that the prosecution's failure to call the confidential informant to testify at trial deprived him of due process.  (Pet. at 5.)  While Coleman initially describes his claim as a due process violation, he also appears to characterize this a Confrontation Clause claim, and the Court interprets it as such.  (See id.; Reply at 2-3.)

This claim is procedurally barred.  In his C.P.L. § 330.30 motion and his first C.P.L § 440.10 motion, Coleman argued that his rights were violated because the prosecution did not call the confidential informant as a witness.  In his decision on the C.P.L. § 330.30 motion, Justice Donnino denied this claim on procedural grounds, finding that it was not preserved for review.  (See Aug. 16, 2017 Sup. Ct. Order at 4.)  Justice Donnino reasoned that, at trial, defense counsel's strategy had focused on the absence of the confidential informant on the witness stand and that Coleman never argued at trial that his confrontation rights were violated by the prosecution's failure to call the confidential informant.  (Id. at 4.)  Given the evidence arrayed against Coleman, Justice Donnino characterized defense counsel's decision to focus the jury's attention on the absence of the confidential information as "perhaps [Coleman's] best defense."  (Id.)  Justice Donnino explained that Coleman centered his defense on the absence of the confidential informant (and stressed the missing witness charge given by the court) because Coleman was not able to "mount any realistic attack on the video recordings."  (Id. at 3.)  Justice Donnino also denied Coleman's Confrontation Clause claim on the merits.  (Id. at 4–7.)

Next, in Coleman's first § 440.10 motion, Justice Gugerty found that Coleman's claim concerning the confidential informant was barred by C.P.L. § 440.10(2)(b) as it was based sufficiently on the record and, thus, should have been brought on direct appeal. Justice Gugerty also found that the prior denial of this claim, when it was raised in Coleman's C.P.L. § 330.30 motion, constituted an additional independent procedural bar on the claim. (July 2, 2018 Sup. Ct. Order at 3.)

Coleman did not seek to appeal the denials of his § 330.30 motion or his first § 440.10 motion.

Coleman's failure to appeal the denial of his § 330.30 motion and failure to seek leave to appeal his first § 440.10 motion technically constitute a failure to exhaust this claim. However, the Court deems this claim to be exhausted, but procedurally barred because Coleman was required to raise this claim on his direct appeal and failed to do so.

Since Coleman failed to raise his Confrontation Clause claim on direct appeal, this claim is precluded from "further consideration in the New York courts because [he] has already made the one request for leave to appeal to which he is entitled." Bossett v. Walker, 41 F.3d 825, 829 (2d Cir. 1994). Additionally, collateral review is unavailable because Petitioner could have raised his Confrontation Clause claim on direct appeal and, thus, cannot raise it in a § 440.10 motion. See N.Y. Crim. Proc. Law § 440.10 (2)(c); Aparicio v. Artuz, 269 F.3d 78, 91 (2d Cir. 2001) ("New York does not otherwise permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal.").

Coleman cannot overcome this procedural bar as he fails to establish either cause and prejudice or actual innocence. To the extent Coleman suggests that his trial counsel was ineffective

for not raising a Confrontation Clause challenge at trial, that argument is meritless.[9]  Trial counsel made a reasonable strategic decision to focus Coleman's defense on the confidential informant's absence from trial and to use a missing witness charge to Coleman's advantage.  Raising a successful Confrontation Clause challenge would have caused the prosecution to call the informant and risked undermining defense counsel's reasonable strategy.

Moreover, Coleman's Confrontation Clause claim fails because it is substantively meritless.  The Court agrees with Justice Donnino's analysis of this issue in his August 16, 2017 order denying Coleman's C.P.L. § 330.30 motion.  Under <u>Crawford v. Washington</u>, 541 U.S. 36, 59 n.9 (2004), the confidential informant's statements on the recordings were properly admitted because they:  (1) were not testimonial in nature and were not offered for the truth of the matter asserted; (2) were <u>res</u> <u>gestae</u> of the crimes and verbal acts that did not trigger the Confrontation Clause; and (3) were also admissible for the non-hearsay purpose of providing context for the defendant's statements on the recording.[10]  (<u>See</u> Aug. 16, 2017 Sup. Ct. Order at 4-7.)

Accordingly, Coleman's Confrontation Clause claim is not a basis for habeas relief.

---

[9]    Additionally, Coleman cannot rely on any such claim of ineffective assistance as the requisite "cause" to overcome this procedural bar because he has not exhausted that particular ineffective assistance claim in state court.

[10]    At trial, the officers also provided some limited testimony recounting statements made by the confidential informant.  This testimony also did not violate the Confrontation Clause.  (<u>See</u>, <u>e.g.</u>, Trial Tr. at 650-53 (Raupp's testimony that, during the March 16 transaction, the confidential informant told Raupp, who was undercover, that Coleman wanted to meet him, which was introduced to explain Raupp's subsequent actions during the interaction with Coleman).

2. **Claims Concerning the Search Warrant and Suppression Hearing (Grounds Two, Three and Six) and Related Ineffective Assistance Claims (Grounds Four and Seven)**

a. **Background**

Prior to trial, Coleman sought to controvert the search warrant that was executed on the apartment he shared with Lopez.  He also attempted to suppress the confidential informant's identification of Coleman from a photographic array, arguing that it was unduly suggestive.  (Hearing Tr., Nov. 22, 2016 at 119-20.)  Lopez sought to suppress the drugs that were found on her when she was arrested.  (See Hearing Tr., Oct. 17, 2016 at 5; Hearing Tr., Nov. 22, 2016 at 119.)

Justice Donnino conducted a pre-trial suppression hearing.  (See Hearing Tr., Oct 17 & 18, 2016; Hearing Tr., Nov. 22, 2016.)  The same day, Justice Donnino issued a protective order that allowed the prosecution to withhold the identity of the confidential informant and to withhold a sealed affidavit by Casey that had been submitted in support of the search warrant.[11]  (Hearing Tr., Oct. 17, 2016 at 4; Aff. in Opp. to Second § 440.10 Mot. at 8, ECF No. 7-38.)  Justice Donnino found that the protective order was necessary because there was a credible threat to the informant's safety.  (See March 16, 2017 Sup. Ct. Order at 1-2, ECF No. 7-14 at 11-15.)

Prior to hearing from any witnesses, Justice Donnino denied Coleman's attempt to suppress the fruits of the search warrant.  Justice Donnino determined, based on his review of the sealed warrant application that the warrant was supported by probable cause.  (Hearing Tr. Oct. 17, 2016 at 3.)  After Detective Casey testified at the hearing, Justice Donnino denied Coleman's attempt to

---

[11]    During the suppression hearing, Justice Donnino eventually unsealed one portion of Casey's supporting affidavit concerning the March 26, 2016 transaction because it was potentially relevant to Lopez's motion to suppress the evidence seized from Lopez when she was arrested.

suppress the photo array, finding that it was not unduly suggestive.  (Dec. 20, 2016 Sup. Ct. Order at 1-4, ECF No. 7-4.)  Justice Donnino also denied Lopez's attempt to suppress the drugs that were found on her on April 1, 2016.  (Id.)

Subsequently, at trial, Casey admitted, during his testimony, that certain statements in his supporting affidavit were incorrect.[12]  Specifically, while his affidavit asserted that Raupp had interacted with Coleman on both March 16 and March 26, Casey testified at trial that Raupp, in fact, did not have any personal contact with Coleman on March 26.  (Trial Tr. at 976, 979.)  Casey's affidavit also stated that the confidential informant was searched before the March 16, 2016 transaction.  (See Respondent's Br. at 29, ECF No. 7-29.)  However, at trial, Casey explained that this search had, in fact, not occurred.  (Trial Tr. at 978.)  He also explained that, although he had reviewed the affidavit, he did not type it up.  (Id. at 987.)  At trial, Coleman did not seek to reopen the suppression hearing based on any of the testimony at trial.

Although Justice Donnino had denied Coleman's motion to suppress the confidential informant's identification of Coleman using the photo array, this identification was ultimately not introduced at trial as the confidential informant did not testify.

On direct appeal, Coleman argued that the evidence recovered pursuant to the search warrant should have been suppressed because of false statements in Casey's affidavit.  (Appellant's Br. at 31-34, ECF No. 7-28.)  Coleman's appellate brief maintained that testimony at trial revealed that Casey's affidavit in support of the warrant application:  (1) contained misstatements as to the existence of a recording of a December 27, 2015 call between the confidential informant and

---

[12]     At trial, defense counsel was not provided with a copy of the warrant application, but counsel was permitted to inspect the document.  (Aff. in Opp. to Second § 440.10 Mot. at 19–20, ECF No. 7-38.)  Additionally, at trial, the protective order was lifted and the prosecution was no longer permitted to withhold the confidential informant's identity.

Coleman[13]; (2) failed to mention that the informant was permitted to turn off the recording for the February 24, 2016 transaction; (3) incorrectly stated that Raupp had contact with Coleman during the March 26, 2016 transaction; and (4) incorrectly stated that the informant was searched prior to the March 16, 2016 transaction.[14] (Id. at 16–26, 31-38.)

The Appellate Division rejected Coleman's arguments concerning the search warrant, finding that the "police affidavit submitted in support of the search warrant application contained ample factual allegations of criminal conduct at [Coleman's] home to justify the issuance of the warrant" and that "the factual allegations in the police affidavit were sufficient to demonstrate that the confidential informant who performed the buys was reliable." Coleman, 176 A.D.3d at 851-52.

On direct appeal, Coleman also argued that a photographic array that the confidential informant used to identify him was unduly suggestive. (Appellant's Br. at 27-30.) The Appellate Division rejected Coleman's arguments and affirmed his conviction, finding that his challenge to the identification procedure was "academic" because the confidential informant did not testify. See Coleman, 176 A.D.3d at 851.

Coleman then sought leave to appeal to the Court of Appeals, focusing on the search warrant issues. This application did not advance any argument about the photo array and trial

---

[13]     Given the conflicting evidence about the existence of this recording and the fact that the actual recording was not produced, Justice Donnino instructed the jury that they could draw an adverse inference about the substance of this recording if they concluded that it, in fact, existed and the police failed to produce it to the defense. (Trial Tr. at 1185.)

[14]     As part of Coleman's direct appeal, his appellate counsel was also granted permission to inspect the warrant application, including Casey's affidavit. (Id.; ECF No. 7-25, Oct. 19, 2018 App. Div. Order, ECF No. 7-27.) The appellate briefs filed by both parties discuss the details of Casey's affidavit. (Appellant's Br., ECF No. 7-28; Respondent's Br., ECF No. 7-29.) Other documents in the instant record also discuss the contents of Casey's affidavit.

court's refusal to suppress the identification.  (ECF No. 7-31.)  The Court of Appeals denied leave.  See People v. Coleman, 34 N.Y.3d 1076 (2019).

### b.  Validity of the Search Warrant

Coleman argues that the search warrant should have been invalidated based on the trial testimony which indicated that certain statements in Casey's affidavit in support of the search warrant were incorrect.  In his appellate brief for his direct appeal, Coleman made almost identical arguments.  (Appellant's Br. at 16-26, 31-38.)

This claim under the Fourth Amendment is precluded by Stone v. Powell, 428 U.S. 465, 494 (1976).  "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas relief on the grounds that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  Stone, 428 U.S. at 494.  Powell requires only that the state courts provide an opportunity for full and fair litigation of a fourth amendment claim, unless . . . [the petitioner] can demonstrate that the state failed to provide a corrective process, or can point to an unconscionable breakdown in that corrective process."  Capellan v. Riley, 975 F.2d 67, 71 (2d Cir. 1992) (internal quotation marks and citations omitted); see Ethridge v. Bell, 49 F.4th 674, 686 (2d Cir. 2022) ("we have held that New York state courts provide facially adequate procedures to redress Fourth Amendment violations.")

Coleman challenged the search warrant prior to trial, and Justice Donnino denied Coleman's suppression motion.  On appeal, Coleman again challenged the validity of the warrant on Fourth Amendment grounds, arguing to the Appellate Division that incorrect statements in Casey's affidavit—which were disclosed during testimony at trial—required suppression.  The Appellate Division denied this claim on the merits.  See Coleman, 176 A.D.3d at 851-52.  Coleman

has not established that the state failed to provide a correct process or that there was an "unconscionable breakdown of the corrective process" concerning his Fourth Amendment claim.[15] Capellan, 975 F.2d at 71.

As explained further below, Coleman also asserts, in connection with other related claims about the search warrant, that Justice Donnino should have held certain hearings and also violated his rights by issuing the protective order that allowed the confidential information to remain anonymous prior to trial. As explained further below, those claims are procedurally barred and also fail under Stone as these claims do not establish that the "state failed to provide a corrective process" or that there was "an unconscionable breakdown in that corrective process." Capellan, 975 F.2d at 71.

### c. Denial of Alfinito/Franks and Darden Hearings

Coleman argues that Justice Donnino erred by denying Coleman's post-trial request for Alfinito/Franks and Darden hearings. Relatedly, Coleman also argues that trial counsel was ineffective for not requesting these hearings both before trial and after Officer Casey's trial testimony revealed that certain statements in Officer Casey's affidavit were false.

With respect to Coleman's argument that he was entitled to Alfinito/Franks and Darden hearings, Justice Donnino rejected these claims on Coleman's C.P.L § 330.30 motion because Coleman improperly raised these arguments for the first time in a post-trial motion. (Aug. 16,

---

[15] Coleman has pointed out, in various filings, that Justice Donnino's written decision on the suppression motions contained certain factual misstatements. Specifically, in addressing Lopez's motion to suppress the drugs that she was carrying when she was arrested, Justice Donnino described the events of the March 26, 2016 transaction, but mistakenly stated that those events occurred on April 1, 2016. (See Dec. 20, 2016 Sup. Ct. Order at 2.) This factual error is insufficient to overcome Stone. Coleman could have, but failed to, raise this factual error when he challenged the suppression ruling on direct appeal. Moreover, this mistake by Justice Donnino is also irrelevant to Coleman's attempts to challenge the search warrant because, irrespective of Justice Donnino's erroneous recounting of these facts, Officer Casey's supporting affidavit still contained ample, uncontradicted, allegations to establish probable cause. Additionally, the Appellate Division also separately reviewed Casey's affidavit and found it to be sufficient.

2017 Sup. Ct. Order at 9.)  Justice Donnino also explained that he would not have granted these hearings even if Coleman had made timely applications.  (Id.)  Coleman did not seek leave to appeal this decision, nor did he advance this claim on direct appeal.  Instead, Coleman raised this claim again in his second C.P.L § 440.10 motion, claiming that the trial court improperly denied his post-trial motion.  Justice Muraca denied this claim as procedurally barred, finding that Coleman failed to raise this issue on direct appeal without a justifiable reason.  (Id. at 3.)  The Appellate Division denied Coleman's application for leave to appeal, and the Court of Appeal dismissed his application for the same.

Coleman did not exhaust his claims about these hearings that were raised in his § 330.30 motion because he did not appeal the denial of that motion.  While Coleman did exhaust these claims in his second § 440.10 motion, Justice Muraca denied these claims because Coleman could have, but failed to, raise them on his direct appeal.  As such, these claims are procedurally barred.  Coleman cannot establish either cause and prejudice or actual innocence to overcome this procedural bar.

Moreover, even if these claims were not procedurally barred, they are precluded by Stone, 428 U.S. 465.  Coleman has not shown that the state court failed to "provide a corrective process" or that there was an "unconscionable breakdown in that corrective process."  Capellan, 975 F.2d at 71.  Coleman could have requested these hearings prior to trial.  He also could have sought to re-open the suppression hearing based on testimony at trial.  He also could have appealed the denial of his § 330.30 motion that requested these hearings, for the first time, after trial.  Moreover, Coleman was still able to raise, on his direct appeal, his claim that trial testimony contradicted Casey's affidavit and therefore required suppression of the drugs seized pursuant to the search warrant—a claim that the Appellate Division rejected on the merits.  Accordingly, Coleman cannot

overcome <u>Stone</u>.  See <u>Gomez v. Miller</u>, No. 19-CV-1571, 2021 WL 5446979, at *10 (N.D.N.Y. Nov. 22, 2021) (finding that the petitioner's argument that he "was not afforded a full and fair opportunity to litigate his Fourth Amendment claim because the trial court failed to entertain a <u>Darden</u> hearing and his counsel was ineffective . . . is insufficient to establish the sort of unconscionable breakdown necessary for the Court to address Petitioner's Fourth Amendment claims").

<u>Stone</u> precludes this Court from addressing the merits of Coleman's arguments concerning these hearings.  In any event, the Court addresses the merits of these arguments below in the context of Coleman's related ineffective assistance of counsel claims.

### d.  Ineffective Assistance Claims Concerning the Search Warrant

Throughout his Petition, Coleman faults his trial counsel for not moving to re-open the suppression hearing based on trial testimony that contradicted certain statements in Officer Casey's affidavit in the search warrant application.  (See Pet. at 10; Reply at 6.)  Coleman argues that counsel was ineffective for failing to request <u>Alfinito</u> and <u>Darden</u> hearings.  (Pet. at 10.)  These ineffective assistance claims are both procedurally barred and meritless.

Coleman first claimed that his trial counsel was ineffective for failing to move to re-open the suppression hearing in his first § 440.10 motion.  (First C.P.L § 440.10 Mot.)  Justice Gugerty denied this claim, finding that it was improperly raised on a § 440.10 motion because there were sufficient facts present in the record to permit direct appellate review of this claim.  (July 2, 2018 Sup. Ct. Order at 3.)  Coleman neither sought leave to appeal that denial nor advanced this claim on direct appeal.

Coleman raised this argument again in his second C.P.L § 440.10 motion.  (See Second C.P.L. § 440.10 Mot. at 19-23.)  Justice Muraca found this claim was procedurally barred because

27

Coleman could have, but failed to, raised this appeal without a justifiable reason. (Oct. 8, 2021 Sup. Ct. Order at 3, 5.) The Appellate Division denied Coleman leave to appeal. While this claim is exhausted, the Court is precluded from reviewing it since the state court's determination that this claim was procedurally barred rests on an independent state law ground. Coleman cannot establish cause and prejudice or actual innocence to overcome this procedural bar.[16]

This claim also fails on the merits. Trial counsel did not seek to re-open the suppression hearing based on the testimony at trial. However, this decision by trial counsel was reasonable given the weakness of these claims. Moreover, even if trial counsel had sought to re-open the suppression hearing based on the trial testimony and had requested a Franks/Alfinito hearing during trial, there is a not a reasonable probability that evidence recovered in the search would have been suppressed.

A hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978) and People v. Alfinito, 16 N.Y.2d 181 (1965) ("Franks/Alfinito hearing") challenges a search warrant on the basis of allegedly false statements contained in the warrant application. "To obtain a Franks–Alfinito hearing, a defendant must make a 'substantial preliminary showing' that the affiant made a false statement in the warrant affidavit either knowingly, or with reckless disregard for the truth, and that this false statement was necessary to the finding of probable cause." Small v. Artus, Case No. 07-CV-1117, 2009 WL 2707319, at *17 (E.D.N.Y. Aug. 20, 2009) (quoting Franks, 438 U.S. at 155-56).

---

[16]    Coleman also raised an ineffective assistance claim concerning the suppression motion in his third § 440.10 motion. However, that claim—which Justice Murphy denied on the merits—concerned potential arguments for suppressing the confidential informant's identification of Coleman and the recordings of the transactions, not the search warrant. (May 18, 2022 Sup. Ct. Order at 2-3.)

There is not a reasonable probability that, if trial counsel had raised these issues, any evidence would have been suppressed.

First, in denying Coleman's C.P.L. § 330.30 post-trial motion, Justice Donnino concluded that he would not have granted a <u>Franks/Alfinito</u> hearing even if Coleman had made a timely request.

Second, on his direct appeal, Coleman argued that the fruits of the search warrant should have been suppressed because Officer Casey's trial testimony revealed that he had made incorrect statements in the search warrant. In response, the prosecution argued, in its appellate brief, that, under <u>Franks</u>, the search warrant was valid because even absent the challenged statements, there was still sufficient evidence to establish probable cause. (Respondent's Br. at 28–29.) The Appellate Division denied Coleman's argument on the merits. <u>Coleman</u>, 176 A.D.3d at 852.

These decisions by Justice Donnino and the Appellate Division make clear that there was not a reasonable probability that evidence would have been suppressed if trial counsel had requested an <u>Alfinito</u>/<u>Franks</u> hearing either before or during the trial.

Third, even assuming <u>arguendo</u> that these decisions by the state courts are not conclusive of the prejudice analysis, the Court concludes, based on its own independent analysis of the record, that there is not a reasonable probability that any of the arguments Coleman asserts trial counsel should have raised would have resulted in the suppression of any evidence. None of the allegedly incorrect statements in Casey's affidavit identified by Coleman were necessary to the finding of probable cause. Even if all of Casey's incorrect statements were excluded, the other evidence cited in his affidavit was more than sufficient to establish probable cause. Casey's affidavit covered four different drug transactions, and he cited the incriminating recordings that corroborated the confidential informant's account of the drug sales. (Respondent's Br. at 26–29.) Casey's allegedly

false statements were not necessary to the finding of probable cause, and no evidence would have been suppressed if trial counsel had moved to re-open the suppression hearing and requested an Alfinito/Franks hearing mid-trial.

Coleman's claim that his counsel was ineffective for failing to request a Darden hearing is also meritless.

In a Darden hearing, the trial court conducts "in camera interview of an informant when a confidential informant provides police with the only sufficient probable cause to arrest the defendant, and the issue of the informant's identity is raised by the defendant at a suppression hearing." Grant v. Graham, No. 08-CV-10453, 2009 WL 3401181, at *5 (S.D.N.Y. Oct. 19, 2009) (citing Darden, 34 N.Y.2d at 181-82.) "Neither the defendant nor defense counsel may be present at the hearing. Id. (citing Darden, 34 N.Y.2d at 182). "The Supreme Court endorsed such hearings, and specifically Darden, as appropriate measures to protect the interests of law enforcement while ensuring fairness to defendants." Id. (citing Ponte v. Real, 471 U.S. 491, 514-15, n. 13 (1985)).

There is not a reasonable probability that, if trial counsel had requested a Darden hearing, the request would have been granted. Nor is there is a reasonable probability that, if a Darden hearing had been held, any evidence would have been suppressed.

Justice Donnino already found, in denying Coleman's § 330.30 motion, that Coleman would not have been entitled to a Darden hearing. (Aug. 16, 2017 Sup. Ct. Order at 8.)

This Court also independently concludes that there is not a reasonable probability that Coleman would have received a Darden hearing or that such a hearing, if held, would have resulted in any evidence being suppressed. There was ample evidence of probable cause here apart from the statements of the confidential informant. Casey's affidavit addressed four drug transactions and cited the incriminating recordings. See People v. Kirkley, , 1543, 99 N.Y.S.3d 500, 504 (App.

Div. 3d Dept' 2019) (holding that <u>Darden</u> hearing was not required because the recording of the controlled buy provided probable cause for the search warrant without regard to the other information in the application.)  Moreover, even if a <u>Darden</u> hearing had been held, there is not a reasonable probability that any evidence would have been suppressed given the incriminating recordings.

Thus, these ineffective assistance claims fail.

### e. Challenge to the Trial Court's Protective Order

Coleman's petition claims, for the first time, that the trial court denied him due process when it issued the protective order that precluded disclosure of the confidential informant's identity prior to trial.  Coleman alleges that this protective order hamstrung his ability to litigate at the suppression hearing.  (Pet. at 13-15.)  Coleman asserts, in conclusory fashion, that Officer Casey made false statements at the suppression hearing and that the protective order prevented the defense from impeaching Casey by calling the confidential informant.  (<u>Id.</u>, Reply at 9.)

As an initial matter, this claim, while technically unexhausted, must be deemed exhausted, but procedurally barred.  Coleman was required to raise this claim in his direct appeal.  He has not established cause and prejudice or actual innocence to overcome this procedural bar.

This claim also fails on the merits.  Generally, the prosecution "enjoys a 'privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law.' "  <u>United States v. Jackson</u>, 345 F.3d 59, 69 (2d Cir. 2003) (quoting <u>Rovalio v. United States</u>, 353 U.S. 53, 59 (1957)).

> However, where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the fundamental requirements of fairness require that the privilege must give way.  There is no fixed rule with respect to such

31

> disclosure. Rather, the court must balance the public interest in protecting the flow of information against the individual's right to prepare his defense, based on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors. If this balancing favors the defendant, then he is entitled to learn the identity of the government's informant.

Id. at 69-70 (internal quotation marks, brackets, and citations omitted).

Here, Justice Donnino—relying on the prosecutor's representation that there was a credible threat to the informant's safety—issued the protective order to delay, not entirely preclude, the disclosure of the confidential informant's identity.   Moreover, Coleman had the option of requesting a Darden hearing, which he did not seek until after trial.  As explained earlier, the Supreme Court has endorsed Darden hearings an "appropriate measures to protect the interests of law enforcement while ensuring fairness to defendants."  Grant, 2009 WL 3401181, at *5 (citing Ponte, 471 U.S. at 514-15).

To the extent Coleman claims that the protective order prevented him from litigating his challenge to the search warrant, such a claim is also not cognizable under Stone because Coleman has not shown that the state court failed to "provide a corrective process" or that there was an "unconscionable breakdown in that corrective process."  Capellan, 975 F.2d at 71.

### f.  Denial of Suppression Motion Concerning Allegedly Suggestive Photo Array and Related Ineffective Assistance of Appellate Counsel Claim

Coleman claims that he was deprived of due process because the state court denied his motion to suppress concerning an allegedly suggestive photo array that was presented to the confidential informant, who identified Coleman in the array.   (Pet. at 8-9; Reply at 4-6.) Respondent opposes this claim as procedurally defaulted and in any event, not warranting habeas relief.  (Respondent's Opp. Mem. at 2-8.)

32

On direct appeal, Coleman argued that the photo array was unduly suggestive. (Appellant's Br. at 26-30.) The Appellate Division rejected this claim as "academic" "[s]ince the People did not offer identification testimony at trial from the confidential informant who identified [Coleman] from a photo array." Coleman, 176 A.D.3d at 851. Coleman did not include this claim in his application for leave to appeal to the Court of Appeals.[17]

Since the time to file a leave application has expired, this claim is now deemed exhausted, but procedurally barred. Coleman, however, insists that he can establish cause for his procedural defaults. He contends that that Respondent never served the Appellate Division's decision on him. He also maintains that appellate counsel was ineffective for not raising this claim. Relatedly, Coleman asserts, in this habeas proceeding, an independent claim that his appellate counsel was ineffective for not raising this argument. Coleman, however, never raised this independent ineffective assistance claim in state court and, as such, it is not exhausted.

Coleman cannot invoke ineffective assistance of appellate counsel to establish the "cause" necessary to overcome the procedural default for his underlying claim because he did not exhaust this ineffective assistance claim. Coleman also cannot establish cause based on Respondent's alleged failure to serve the Appellate Division's decision on him. Respondent was not obligated to personally serve Coleman because he was represented by counsel and, as such, Respondent was only required to serve the copy of the Appellate Division's decision on appellate counsel pursuant to C.P.L. § 460.10 and Civil Practice Law and Rules 2103(b). (ECF No. 11-1 at 1.) Furthermore,

---

[17]    On February 28, 2022, more than two years after his leave application was denied, Coleman wrote to the Court of Appeals that he was not personally served with the entry of the Appellate Division's decision. (ECF No. 14-1.) He also claimed that appellate counsel filed the leave application without Coleman's consent, and that counsel failed to include the claim concerning the allegedly suggestive identification in the application. (Id.) The Court of Appeals did not accept Coleman's letter for filing. (ECF No. 14-2.)

Coleman's own submission shows that his appellate counsel notified him of the Appellate Division's decision.  (ECF No. 10 at 69.)

Coleman also cannot establish prejudice—which is required both to excuse his procedural default and to prevail on the merits of the independent ineffective assistance of appellate counsel claim.

While the trial court denied Coleman's attempt to suppress the confidential informant's identification of Coleman, the confidential information never testified at trial.  That is why, when Coleman raised this suppression argument on appeal, the Appellate Division correctly denied this claim as "academic."  See Coleman, 176 A.D.3d at 851.  Even assuming for the sake of argument that this identification should have been suppressed, any error was harmless as the confidential information did not testify.  Moreover, the Court also finds that Justice Donnino did not err in denying Coleman's motion to suppress this identification evidence.

Accordingly, the Court rejects Coleman's underlying claim concerning the photo array as well as his related ineffective assistance of appellate counsel claim.[18]

### 3.  Brady and Related Ineffective Assistance Claims Concerning Field Test Reports and the Evidence Logbook (Grounds Four and Five)

Coleman claims that the prosecution violated Brady v. Maryland, 373 U.S. 83 (1963), when the prosecution failed to turn over: (1) reports concerning the field testing of some of the drugs; and (2) the logbook for the police department's Evidence Management Unit ("EMU").[19]  (Pet. at

---

[18]    In his third § 440.10 motion, Coleman brought another ineffective assistance claim concerning this identification and the photo array.  This claim similarly fails because the confidential informant did not testify.

[19]    Coleman's claim that the prosecution's failures to disclose evidence violated People v. Rosario, 9 N.Y.2d 286 (1961), does not present a federal constitutional question cognizable on federal habeas review.

12.)  Coleman also raises related ineffective assistance claims concerning defense counsel's alleged failures in connection with the field test reports and EMU logbooks.  (Id. at 10.)

### a. The Field Reports – <u>Brady</u> Claim and Related Ineffective Assistance Claim

Prior to trial, the prosecution provided Coleman with field test reports dated May 10, 2016.  (Aff. in Opp. to Second § 440.10 Mot. at 5, 7.)  All the drugs at issue were also subsequently tested at a laboratory and confirmed to heroin and cocaine.

Coleman, however, claims that the prosecution failed to turn over field reports for other field tests that were conducted on drugs that the confidential informant purchased.  (Pet. at 12.)  Casey's affidavit in support of the search warrant referenced field testing that occurred prior to the issuance of the search warrant on April 1, 2016.  (Id.; see also Aff. in Opp. to Second § 440.10 Mot. at 25–26.)  The prosecution never produced field test reports for any field tests that occurred prior to April 1.

Coleman first raised this Brady claim in his § 330.30 motion.  That motion was denied and Coleman did not appeal that denial.

Coleman also raised this Brady claim concerning the allegedly missing field reports in his second § 440.10 motion.  In response to that motion, Respondent's counsel submitted an affirmation that explained her investigation into both the field reports and the EMU logbooks, which are discussed infra.  Respondent's counsel spoke with the trial prosecutor, Coleman's trial counsel, Casey, Raupp, and Sergeant John Leykum.  (Aff. in Opp. to Second § 440.10 Mot. at 24–27.)  According to the affirmation, Raupp and Casey reported that they had searched files for these field test reports, but were unable to find any such reports.  (Id. at 26.)  Raupp reported that although he did not independently recall having conducted these field tests, he was certain he would have performed these tests because they were reported in the search warrant application.

35

(Id.)  Raupp also explained that he would not have continued to interact with Coleman without confirming that what Coleman had previously sold were, in fact, controlled substances.  (Id.) Casey reported that it was possible that this field testing was done, but no reports were prepared. (Id.)

Justice Muraca denied this claim as procedurally barred because Coleman could have raised this issue on direct appeal, but "failed to do so without a justifiable reason."  (Oct. 8, 2021 Sup. Ct. Order at 3.)  Coleman's motion to for leave to appeal was denied.

This claim is procedurally barred.  Coleman has not established cause and prejudice or actual innocence to overcome this procedural bar.  This claim also fails on the merits.

A successful Brady claim must satisfy three criteria: (1) the evidence at issue must be favorable to the accused party, meaning either exculpatory or possible to use for impeachment purposes; (2) said evidence must have been suppressed by the prosecution, either willfully or inadvertently; and (3) the accused must have suffered prejudice.  See Strickler v. Greene, 527 U.S. 263, 281-82 (1999).  "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985).

Coleman has not established that the prosecution suppressed any field test reports.  As explained above, in opposing the second § 440.10 motion, counsel for Respondent submitted an affidavit recounting her unsuccessful attempts to locate the alleged field reports.  (Aff. in Opp. to Second § 440.10 Mot. at 25–26.)  Moreover, given that these field reports have never been located, Coleman cannot show that there is a reasonable probability that the content of these field reports would have helped the defense and changed the outcome of the proceedings.

Relatedly, Coleman also claims that trial counsel provided ineffective assistance in connection with these missing field test reports. (Pet. at 10.) This ineffective assistance claim, which Coleman raised in his second § 440.10 motion, is also procedurally barred. Again, Coleman cannot establish cause and prejudice or actual innocence to overcome the procedural bar.

As for the merits of this ineffective assistance claim, Coleman cannot establish that defense counsel acted unreasonably. While Coleman maintains that counsel should have made further attempts to obtain these field reports, such efforts would have been fruitless. Moreover, given that these field test reports have not been located, Coleman cannot show that there is a reasonable probability that the content of these field reports would have helped the defense and changed the outcome of the proceedings. Accordingly, this ineffective assistance claim fails.

To the extent Coleman is also arguing that trial counsel should have used the police department's failure to produce these field reports to try to impeach the police officers and/or challenge the chain of custody at trial, that claim also fails on the merits.

First, trial counsel's decisions regarding the field tests were reasonable. At trial, defense counsel did attempt to question Raupp about field testing. (Trial Tr. at 785.) However, at a sidebar, the prosecutor informed defense counsel that police department policy required that field testing be conducted at a special location at headquarters due to the safety risks of potentially exposing officers to fentanyl. (Id. at 802.) Justice Donnino informed defense counsel that while he could still question the witness about this issue, the court assumed that he would not want to inquire further into this issue "for tactical reasons." (Id. at 803.) Defense counsel ultimately decided not to further pursue this line of inquiry. Defense counsel's decision not to ask additional questions about the field testing was reasonable given the potential prejudice of associating Coleman with fentanyl. This was a reasonable strategic decision, particularly given that further inquiry into the

field tests (and any missing documentation for certain field tests) was unlikely to substantially aid the defense at trial.

Coleman is also unable to establish prejudice. There is not a reasonable probability that highlighting the prosecution's failure to produce these field reports would have altered the outcome of the trial. The evidence at trial against Coleman—including the incriminating recordings—was overwhelming and subsequent field and laboratory testing was performed on the drugs. Coleman's suggestion that missing field test reports may have led the jury to discredit the police witnesses and the prosecution's chain of custody evidence is not persuasive. There is simply not a reasonable probability that presenting these issues to the jury would have led to a different verdict.

### b. EMU Logbooks – __Brady__ and Related Ineffective Assistance Claim

#### i. Background

At trial, the prosecution presented evidence of the December 27, 2015, February 24, 2016, and March 16, 2016 drug sales by Coleman. On each occasion, the narcotics were purchased by the confidential informant, under police supervision, who then turned them over the police. The police transported the narcotics to the EMU for processing and testing. Specifically, Detective Raupp testified that the items recovered from the December 27 transaction were placed in an evidence bag, "put on a desk and vouchered," and transported to the evidence locker in the police headquarters. (Trial Tr. at 787.) On cross-examination, Raupp described the process by which evidence is vouchered and transported:

> We bring the drugs back to Narcotics. We fill out an invoice. Those drugs then get sealed. We sign the top of the invoice bag. The paperwork is on top of the bag. We physically drive those drugs to Police Headquarters, where they get put in evidence locker which is already sealed, the bag is already sealed, and they are in a memo logbook on the desk paperwork.

(Id. at 788.)

For the December 27 transaction, Raupp did not recall whether he was the individual who transported the narcotics to police headquarters. (Id. at 788–89.) He also could not recall whether this occurred in the evening of December 27 or after midnight, on December 28. (Id.) Raupp stated that he would need to look at the EMU logbook to confirm if he or another officer transported the drugs. (Id. at 789.) Raupp explained that the officer who originally obtained the drugs is not always the officer who ends up bringing the drugs to headquarters. (Id. at 788–89.) The "supervisor" would determine who would bring any seized items over to headquarters on any particular day. (Id.)

Raupp confirmed that once the evidence was placed into the evidence locker at police headquarters, the only person who could access it was the individual who ran the EMU. (Id. at 789-90.)

For the February 24, 2016 transaction, the confidential informant purchased bags of heroin from Coleman. (Id. at 796.) Casey was the officer who processed and vouchered that evidence. (Id. at 625, 800.) As with the drugs purchased on December 27, Raupp could not recall whether he or another officer transported these vouchered drugs to police headquarters. (Id. at 799.) Raupp explained that he would have to look at the logbook to see who transported the drugs to headquarters. (Id. at 799–80.)

Testimony from Casey and the medical examiner revealed that, for the February 24 transaction, there was a discrepancy in the number of bags of drugs vouchered. While Casey documented that there were 50 bags, the medical examiner confirmed there were, in fact, 52 bags. (Id. at 932, 1027.) A recording played at trial indicated that, like Casey, Coleman himself also appeared to have miscounted the number of bags as Coleman and the confidential informant had

agreed on a transaction involving 50 bags of heroin.  (Id. at 615.)  At trial, Casey also explained that these glassine envelopes will sometimes stick together.  (Id. at 934.)

For the March 16, 2016 transaction, Raupp confirmed that he vouchered the drugs purchased by the confidential informant.  (Id. at 818.)  And, Raupp explained, yet again, that either himself, Officer Casey, or another member of his squad then took this evidence over to police headquarters and signed the logbook there.  (Id. at 819.)

Based on Raupp's testimony, defense counsel requested production of the logbooks.  (Id. at 803.)  The prosecution subsequently turned over the requested logbooks, which defense counsel and the court acknowledged:

> [PROSECUTOR]: So, just for the record, the logbook we had previously been asked to submit to counsel and provide to the Court were done yesterday.
>
> [DEFENSE]: Acknowledge receipt.
>
> THE COURT: I think the day before, be that as it may, they were turned over.

(Id. at 1114.)  After receiving the logbooks, defense counsel did not introduce or use the logbooks at trial.  In his closing, defense counsel argued that Coleman's prosecution was based on, among things, a "flawed investigation," "evidence discrepancies, [and] missing evidence."  (Id. at 1122-23.)  Highlighting various inconsistencies, defense counsel highlighted the discrepancy in the number of heroin bags vouchered from the February 24, 2016 transaction, which he maintained called into question the reliability of the chain of custody.  (Id. at 1133-34.)

Coleman now claims that defense counsel was never actually given the logbooks.  Coleman also asserts, in the alternative, that if defense counsel did receive the logbooks, then he was

ineffective for not using the logbooks at trial to highlight alleged discrepancies therein and to challenge the chain of custody.

ii. *Analysis of the <u>Brady</u> and Related Ineffective Assistance Claims*

In the instant Petition, Coleman raises two issues with respect to the logbook entries. First, he claims that the prosecution violated <u>Brady</u> by withholding the logbooks from him. (Pet. at 12; Reply at 7-8; ECF No. 10 at 6-7.) Second, Coleman argues that trial counsel was ineffective for failing to investigate and use the logbooks to challenge the "complete chain of custody" of the narcotics. (Pet. at 10.) Coleman points to alleged discrepancies in the logbook entries concerning the December 27, 2015 and February 24, 2016 transactions.

Turning first to the alleged <u>Brady</u> violation, Coleman's claim is both procedurally barred and without merit. In the Petition, Coleman argues that the prosecution "failed to provide copies of the [EMU] logbook" to the defense. (Pet. at 12.) As he did in his second § 440.10 motion, Coleman points to responses to Freedom of Information Law ("FOIL") requests Coleman filed years after the trial, which sought copies of the logbooks and other documents. The initial responses to these FOIL requests stated that the logbooks could not be located. (<u>See</u> Respondent's Opp. Aff. ¶¶ 35–36; Pet. at 12; Second C.P.L. § 440.10 Mot. at 11-13.) However, Coleman was eventually provided with copies of the logbooks after Coleman filed his second § 440.10 motion. (Respondent's Opp. Aff. ¶ 37.) The prosecution's response to Coleman's second § 440.10 motion also included copies of the logbooks. (Aff. in Opp. to Second § 440.10 Mot., Ex. C.) Additionally, in response to this § 440.10 motion, Respondent's attorney submitted an affirmation recounting that she spoke with the prosecutor from Coleman's trial who recalled providing the logbook entries to defense counsel and specifically recalled redacting information from unrelated cases before providing the logbooks to defense counsel. (<u>Id.</u> at 25–26.) Respondent's attorney also contacted

Coleman's trial counsel, who indicated that, to the best of his recollection, the prosecutors showed him the logbook entries.  (Id. at 27.)

Justice Muraca rejected the Brady claim in Coleman's § 440.10 motion, finding that that it was procedurally barred.  She also denied this claim on the merits.  While Coleman argued that the initial FOIL responses—which indicated that the logbooks could not be located—constituted newly discovered evidence, Justice Muraca found to the contrary as defense counsel had admitted, on the record, that he had received the logbooks.  (Oct. 8, 2021 Sup. Ct. Order at 4.)  Additionally, Justice Muraca found that even if the "missing logbooks were *newly discovered evidence*, the evidence or lack thereof, would not "'create a reasonable probability of a more favorable verdict.'" (Id. (citation omitted).)

Coleman's Brady claim is procedurally barred and he cannot establish cause and prejudice or actual innocence.

Moreover, this Court also finds that Coleman's Brady claim is substantively meritless.

The logbooks were not suppressed.  The record—including, critically, the trial transcript itself—establishes that the prosecution did produce the logbooks to defense counsel during trial. Moreover, as discussed below in the context of Coleman's related ineffective assistance claim, there is a not reasonable probability that, if the logbooks had been used at trial, that the jury's verdict on any of the charges would have been different.  Accordingly, Coleman's Brady claim fails.

Coleman has also claimed that trial counsel was ineffective because he failed to procure the logbooks.  That claim fails because, as explained above, defense counsel did obtain the logbooks at trial.  Coleman also argues, in the alternative, that if the logbooks were produced, then

his trial counsel was ineffective for failing to use logbooks to challenge the chain of custody. This claim also fails on the merits.

Coleman points to various alleged discrepancies in the logbooks. First, Raupp and some of the other officers who dropped the drugs off at the EMU failed to write their badge number in the logbook. (Aff. in Opp. to Second § 440.10 Mot., Ex. C.) This is inconsequential. Second, the logbooks indicate that, for certain dates, Casey and Raupp did not drop the drugs off at the EMU. Rather, this was done by other officers. (Id.) This point was consistent with Raupp's testimony and would not have helped Coleman. Raupp had already testified that: (1) he and Casey may not have transported the drugs themselves after each of the transactions at issue; and (2) the logbooks would indicate who transported the drugs. Third, for the drugs purchased on February 24, 2016, the logbook indicates that the evidence was dropped off at the EMU at 1:20 AM on February 25, 2016. (Id.) Again, this would not have been helpful to the defense. The evidence at trial indicated that this transaction occurred around 10:00 PM on February 24, so the fact that this evidence was delivered to the EMU early the next morning was consistent with the prosecution's evidence at trial. (Trial Tr. at 621.) Finally, Coleman stresses that, for the December 27, 2015 transaction, one field in the logbook entry contains a date that was crossed out. Specifically, in a column that appears to be titled "EMU only," it appears that "12/28/15" was originally written.[20] (Aff. in Opp. to Second § 440.10 Mot., Ex. C.) The "28" was then crossed out and replaced with "29" such that the corrected entry now indicates "12/29/15." Neither this point nor any of the other points above would have helped Coleman's defense and there is certainly not a reasonable probability that the outcome would have been different if defense counsel had used these logbooks at trial.

---

[20]    Coleman claims that the crossed-out date is "12/25/15." Even assuming arguendo that Coleman's characterization of this handwriting is correct, his claim still fails.

For similar reasons, trial counsel's determination not to use the logbooks at trial was reasonable. Trial counsel reasonably focused on other evidence, including the absence of the confidential informant and the discrepancy involving the number of bags that were vouchered for the February 24, 2016 transaction.[21]

Relatedly, Coleman also asserts that trial counsel should have called the other officers who transported the drugs to the EMU and who were identified in the logbooks. Trial counsel's decision not to call these witnesses was undoubtedly strategic and certainly not unreasonable. A "counsel's decision as to whether to call specific witnesses—even ones that might offer exculpatory evidence—is ordinarily not viewed as a lapse in professional representation." United States v. Best, 219 F.3d 192, 201 (2d Cir. 2000) (internal quotation marks and citations omitted). "'Courts applying Strickland are especially deferential to defense attorneys' decisions concerning which witnesses to put before the jury.'" Lopez v. United States, 792 Fed. App'x 32, 38 (2d Cir. 2019) (summary order) (quoting Greiner v. Wells, 417 F. 3d 305, 323 (2d Cir. 2005)). Moreover, there is not a reasonable probability that calling those officers would have led to a different outcome at trial.[22]

Therefore, Coleman's Brady and ineffective assistance claims concerning the logbooks are denied.

---

[21] The parties entered into a stipulation concerning some of the drugs at issue. (Trial Tr. at 1079-82.) Coleman asserts that counsel should not have entered into this stipulation given the alleged discrepancies in the logbooks. This argument is meritless. Notably, the stipulation did not even cover the drugs purchased on December 27, 2015 and February 24, 2016. (Id. at 1080-82.) Moreover, given the overwhelming evidence at trial, there is not a reasonable probability that the outcome of the trial would have been different if counsel had rejected this stipulation and used the logbooks at trial.

[22] Coleman also generally asserts that trial counsel "failed to assure a complete chain of custody." (Pet. at 10.) This argument is meritless. Trial counsel made reasonable decisions in challenging the chain of custody and the handling of the evidence, including his decision to highlight the discrepancy in the number of bags at issue in the February 24, 2016 transaction. Other arguments that trial counsel did not pursue concerning the chain of custody were unlikely to be successful and, if any of these were raised, there is not a reasonable probability that the outcome of the trial given the evidence at trial.

#### 4. Additional Ineffective Assistance of Counsel Claims (Ground Four).

Coleman raises various other ineffective assistance of claims.  All of these of claims are meritless.

##### a. Failure to Retain Private Investigator and Expert Witness

Coleman argues, for the first time in this habeas proceeding, that his trial counsel was ineffective because he failed to pay a private investigator and did not hire an expert to review the video recordings evidence for signs of alterations.  These claims, while unexhausted, are plainly meritless.  Coleman does not identify what this private investigator would have uncovered.  He has also not provided any affidavit or declaration from an expert witness opining that the video recordings were altered.  These speculative claims fail on both prongs of <u>Strickland</u> and are denied as plainly meritless.

##### b. Failure to request <u>Frye</u> hearing

Next, Coleman argues that his trial counsel was ineffective because he did not request a <u>Frye</u> hearing.  (Pet. at ECF p. 10; Reply at 6; ECF No. 10 at 2.)  Coleman previously raised this claim in his second § 440.10 motion, which Justice Muraca rejected as both procedurally barred and meritless.  (<u>See</u> Oct. 8, 2021 Sup. Ct. Order at 5.)

In his decision, Justice Muraca found that this claim was procedurally barred because Coleman failed to raise this claim in his § 330.30 motion and on direct appeal and did not provide any justification for not doing so.  (<u>Id.</u>)

Justice Muraca also rejected this claim on the merits, finding that Coleman was unable establish prejudice under <u>Strickland</u>.  (<u>Id.</u>)  Justice Muraca reasoned that "the scientific tests performed [were] not new procedures requiring recognition of an acceptance by the [c]ourt, resolved at a <u>Frye</u> hearing." (<u>Id.</u>)

This claim is procedurally barred and Coleman cannot establish cause and prejudice or actual innocence.

This claim also fails on the merits. The state court's application of <u>Strickland</u> to Coleman's claim was not contrary to, or an unreasonable application of, established federal law. There is not a reasonable probability that Coleman would have been granted a <u>Frye</u> hearing if counsel had sought one. There is also not a reasonable probability that, if a <u>Frye</u> hearing had been held, the drug testing results would have been excluded at trial.

### c. Failure to Prepare Other Defenses

Coleman claims that his trial counsel failed to prepare and pursue other defenses at trial. (ECF No. 10 at 2.) Coleman's papers appear to characterize two different strategies as his "best defense." (<u>See</u> <u>id.</u>; see also Third C.P.L § 440.10 Mot. at 8-17.) First, Coleman argues that his best defense would have been to lodge a stronger challenge to the search warrant. As addressed above, there is not a reasonable probability that such attempts would have been successful.

Second, Coleman claims that his "best defense" would have been to try to suppress the recordings made by the confidential informant on the basis that the confidential informant did not consent to the recordings. (<u>Id. at 12-17.</u>) Justice Murphy denied this claim on the merits. (<u>May 18, 2022 Sup. Ct. Order at 3.</u>) This Court similarly rejects this claim. The notion that the confidential informant did not consent to these recordings is absurd. Trial counsel cannot be faulted for not pursuing a meritless and frivolous argument. And, there is not a reasonable probability that this argument would have resulted in the suppression of the recordings. This claim is meritless.

### d. Failure to timely challenge the identification notice

Finally, Coleman claims, as he did in his third C.P.L § 440.10 motion, that the prosecution provided a late pretrial notice to the defense concerning the confidential informant's identification of Coleman. Coleman alleges that trial counsel was ineffective because he made an "untimely" challenge to this belated notice from the prosecution. (Third C.P.L. § 440.10 Mot. at 9-11.) Justice Murphy denied this claim on the merits. (May 18, 2022 Sup. Ct. Order at 3-4.)

This claim is meritless because, inter alia, the confidential informant did not testify at trial and, as such, Coleman cannot possibly show prejudice. Accordingly, this claim fails.

### III.    CONCLUSION

For the foregoing reasons, Coleman's Petition is DENIED in its entirety. The Court further declines to issue a certificate of appealability because Coleman has not made a substantial showing that he was denied a constitutional right. See 28 U.S.C. § 2253(c)(2). Finally, I certify that any appeal of this Order would not be taken in good faith, and thus, in forma pauperis status is denied for the purposes of any appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

**SO ORDERED.**

Dated:  March 4, 2025
Central Islip, New York

/s/ (JMA)
JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE